UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTINA DODGE, ) | |
| ) | |
| Plaintiff, ) | CASE NO. C03-1758-RSM |
| ) | |
| v. ) | REPORT AND |
| ) | RECOMMENDATION |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Christina Dodge appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. For the reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On November 28, 2000, Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability since April 20, 2000. Tr. 19, 62-64, 329-330. Her application was denied initially (Tr. 35-38) and on reconsideration (Tr. 40-42). On August 12, 2002, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Cheri L. Filion. Tr. 342-400. Plaintiff, who was represented by counsel, testified at the hearing. *Id.* Vocational

REPORT AND RECOMMENDATION
PAGE - 1

Expert ("VE") Susan Bachelder-Stewart also testified at the hearing. *Id.* On August 12, 2002, the ALJ issued an unfavorable decision, finding Plaintiff not disabled and therefore, ineligible to receive DIB and SSI benefits. Tr. 19-30. Plaintiff's request for review was denied by the Appeals Council on May 16, 2003, (Tr. 7), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. Plaintiff timely filed her appeal with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision and award benefits, or in the alternative, remand for further administrative proceedings. Plaintiff argues that the ALJ: 1) improperly determined that Plaintiff was not disabled at step three by ignoring Plaintiff's examining physicians' findings and opinions regarding the severity of her mental health disorders; 2) improperly assessed Plaintiff's credibility; and 3) improperly assessed Plaintiff's residual functional capacity ("RFC"). Defendant responds that the Commissioner's decision should be affirmed because it is supported by substantial evidence and was decided by the proper legal standards.

## III. STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it

1 is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d
2 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into

consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

## V.  SUMMARY OF THE RECORD EVIDENCE

Plaintiff was twenty-one (21) years old at the time of the hearing before the ALJ. Tr. 62, 329, 346. She has a high school education, and she previously worked as a telemarketer, fast food worker, cook, video store clerk, and daycare provider. Tr. 20, 62, 329. Plaintiff identified the following reasons for being unable to work: mental instability, post-traumatic stress disorder ("PTSD"), anxiety disorder, agoraphobia, obsessive compulsive disorder ("OCD"), paroxysmal supraventricular tachycardia ("PVST"), and migraine headaches. Tr. 20, 68, 104-105, 166. The evidence relevant to Plaintiff's allegations is incorporated into the discussion below.

## VI.  THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date of April 20, 2000. Tr. 25, 29. At step two, she found that Plaintiff has the following severe impairments: PTSD, an anxiety disorder, PVST (heart palpitations), and OCD. *Id.* However, the ALJ concluded at step three that Plaintiff's impairments do not meet or equal any impairment listed in the Regulations. *Id.*

At step four, the ALJ found that Plaintiff lacks the residual functional capacity to perform more than simple and routine tasks, and she also should have no public contact and limited contact with co-workers and supervisors. Tr. 27-28, 29. The ALJ concluded that Plaintiff lacks the RFC to perform her past relevant work. Tr. 28, 29. In reaching this conclusion, the ALJ found that Plaintiff's statements concerning her impairments

and their impact on her ability to work are not entirely credible. Tr. 27, 29. At step five, the ALJ determined that considering Plaintiff's age, educational background and residual functional capacity, she is able to make a successful vocational adjustment to work that exists in significant numbers in the national economy, including employment as a deli-cutter slicer, laundry work, and night cleaner. Tr. 28, 29. Accordingly, the ALJ concluded that Plaintiff had not been disabled at any time through the date of the decision, and she is ineligible for DIB and SSI. Tr. 29-30.

## VII.  DISCUSSION

### A.  Step Three Determination

Plaintiff claims that the ALJ erred in finding that none of Plaintiff's severe mental impairments meet or equal any of the "Listed" mental impairments.

If an ALJ determines that a claimant has a medically determinable mental impairment, she must rate the degree of the claimant's limitations in four functional areas: activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation. 20 C.F.R. §§ 404.1520a(b), (c), 416.920a(b), (c). This may be accomplished by filling out a Psychiatric Review Technique Form ("PRTF") or by including, in the narration, specific findings regarding the degree of limitation in each of the four areas. *Id.* at §§ (e)(3). At step three of the sequential evaluation of disability, the ALJ must determine whether the claimant's "severe" impairments, individually or in combination, meet or equal any of the medical impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d), 416.920(d). In determining whether a claimant with a mental impairment meets a listed impairment, the Commissioner considers: (1) whether specified diagnostic criteria ("paragraph A" criteria) are met; an d(2) whether specified functional restrictions are present ("paragraph B" criteria). *See* 20 C.F.R §§ 404.1520a, 416.920a. The

claimant's mental impairment must satisfy both paragraph A and paragraph B criteria to meet the listing.  A claimant who satisfies the diagnostic criteria (paragraph A) contained in a listed mental impairment must be found disabled, if his condition results in at least two "marked" or higher degree of limitation in the four areas of functioning.  20 C.F.R. Part 404, Subpt. P, App.1.

### 1.   Episodes of Decompensation

Plaintiff argues that the ALJ erred when she failed to make any finding regarding the number of episodes of decompensation.

An ALJ's failure to assess the degree of limitation in each of the four essential areas of functioning is *per se* legal error requiring reversal.  *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000) (citing *Stambaugh v. Sulivan*, 929 F.2d 292, 296 (7th Cir. 1991).  In *Gutierrez* the Ninth Circuit Court of Appeals held that "where there is a colorable claim of mental impairment, 20 C.F.R. § 404.1520a requires the evaluation form [PRTF] to be completed and appended to the decision, and the failure to do so requires remand to the Social Security Administration."  199 F.3d at 1051.  The federal regulations have been amended since *Gutierrez*, and the ALJ is no longer required to append the PRTF.  *See* 65 Fed. Reg. 50746-01 at 50748 (effective Sept. 20, 2000).  Nevertheless, the ALJ is still required to "document application of the technique in the decision."  20 C.F.R. §§ 404.1520a (e), 416.920a (e) (2003).

Here, the ALJ found that Plaintiff's anxiety disorder, PTSD, and OCD were severe mental impairments.  In reliance on the opinion of the State Agency doctors, the ALJ found only "moderate" limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  Tr. 26, 273.  The ALJ, however, did not rate Plaintiff's episodes of decompensation.  While the ALJ erred in

REPORT AND RECOMMENDATION
PAGE - 6

failing to rate this area of functioning, she did not err in rating the degree of limitation in the remaining areas of function as "moderate"(see discussion below).  Therefore, even if Plaintiff had repeated episodes of decompensation, it would be insufficient for a finding of an impairment that meets or equals a listing level impairment.  For the following reasons, this error was harmless.

### 2. Examining Physician's Opinion

Plaintiff first argues that the ALJ erred in failing to find that she was disabled at step three of the sequential evaluation where her examining physicians found that her mental impairment met or equaled a listing level mental impairment.  In finding that Plaintiff's impairments did not meet or equal a listing level impairment, the ALJ asserted that there were no treating or examining physicians that made findings equivalent in severity to the criteria of any listed impairment.  Tr. 25.  Plaintiff correctly points out that such a statement was inaccurate given Dr. Anselm Parlatore's findings of multiple "marked" impairments in functioning, due to Plaintiff's anxiety disorder and PTSD (Tr. 324-26), and Dr. Coleman's assessment of moderate and marked functional limitations in the four areas of functioning (Tr. 163).  Additionally, Eric Papritz, Plaintiff's mental health counselor, opined that Plaintiff's anxiety related disorders were of a severity to meet or equal listing 12.06 (Anxiety Related Disorders).  Tr. 327, 327A, 328.

Defendant, while conceding the error on the ALJ's part, argues that such an error was harmless because the ALJ gave specific and legitimate reasons for discounting the opinions of the examining physicians and those of the lay witness, Mr. Papritz.  An ALJ may reject the opinions of examining physicians that are contradicted by the opinions of other doctors only if he provides specific and legitimate reasons that are supported by substantial evidence in the record for rejecting them.  *Lester*, 81 F.3d at 830.  Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining

physician, the Court will credit that opinion "as a matter of law." *Lester*, 81 F.3d at 834, (*citing Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)).

### *a. Dr. Anselm Parlatore*

Anselm A. Parlatore, M.D., a psychiatrist, examined Plaintiff on April 20, 2001, and April 27, 2001. Tr. 211-215, 305-308. On April 6, 2002, Dr. Parlatore completed a form, wherein he stated that Plaintiff had a marked restriction in her activities of daily living, a marked restriction in maintaining social functioning, frequent deficiency of concentration, persistence or pace, and frequent repeated episodes of deterioration or decompensation. Tr. 324-25.

In discounting Dr. Parlatore's opinion as expressed in the April, 2002 form, the ALJ stated that 1) Dr. Parlatore examined Plaintiff on only one occasion, 2) the April, 2002, form was completed one-year after the initial examination and the findings during the April, 2001, examination do not agree with the limitations expressed in the form, and 3) his one time evaluation does not describe what Plaintiff's functioning is at other times. Tr. 28. Plaintiff correctly points out that Dr. Parlatore, in fact, examined Plaintiff on two occasions not just one. However, this does not markedly detract from the validity of the remaining reasons propounded by the ALJ.

Plaintiff argues that there is no inconsistency between the marked limitation expressed by Dr. Parlatore in his April, 2002, assessment and his notes from the April, 2001, examinations. Plaintiff points to the fact that, in his first evaluation of April 20, 2001, Dr. Parlatore rated Plaintiff's Global Assessment of Functioning ("GAF") at 50, which corresponds to a "serious" impairment of functioning. Plaintiff also argues that in the April 27, 2001 evaluation, Dr. Parlatore found marked limitation in Plaintiff's ability to 1) relate appropriately to co-workers and supervisors, 2) interact appropriately in public contacts, and 3) respond appropriately to and tolerate the pressures and

REPORT AND RECOMMENDATION
PAGE - 8

expectations of a normal work setting. Tr. 307.

A GAF assessment of 50 may indicate either severe symptoms or any serious impairment in social, occupational, or school functioning. Dr. Parlatore's evaluation does not make clear what the rating of 50 refers to. However, a review of both April, 2001, evaluations reveals that Dr. Parlatore was referring to limitations in Plaintiff's social functioning. For example, the only symptom Dr. Parlatore rated as a marked symptom is Plaintiff's verbal expression of anxiety or fear. Tr. 306. As for functional limitations, Dr. Parlatore noted marked limitations in social functioning factors. Tr. 307. Therefore, Dr. Parlatore's April, 2002, assessment that indicated marked limitations in all areas of functioning, did not correspond to his earlier evaluations that found marked limitations only in the area of social functioning. Even though the ALJ did not give full weight to Dr. Parlatore's opinion, the ALJ did take into account his opinion regarding Plaintiff's social limitations. In her RFC assessment, the ALJ found that Plaintiff "should have no public contact and limited contact with co-workers and supervisors. Tr. 29.

Additionally, the ALJ's discounting of Dr. Parlatore's opinion on the ground that the 2001 evaluations do not indicate that Plaintiff's conditions are ongoing, is a specific and legitimate reason. For a person to be found disabled, his severe impairments must be expected to last one year or more. 42 U.S.C. § 423 (d)(1)(A). Accordingly, the ALJ did not err here.

### b. Dr. William Coleman

William H. Coleman, Ph.D., a licensed psychologist, performed a psychiatric evaluation of Plaintiff on November 13, 2000. Tr. 161-69. He found that Plaintiff had moderate and marked limitations in mental functions (Tr. 162-163) and would be impaired for a minimum of twelve (12) weeks and a maximum of twenty-six (26) weeks

(Tr. 164). The ALJ rejected Dr. Coleman's opinion because Dr. Coleman "[a]ppeared to rely on the claimant's self-reported symptoms" and because the form used by Dr. Coleman "was a check-box form which did not identify objective findings based on a thorough mental status examination." Tr. 25. Plaintiff argues that the ALJ has no reason to assume that Dr. Coleman did not perform a mental status evaluation and simply relied on Plaintiff's self-reported symptoms. Additionally, Plaintiff argues that there is no basis for according the check-box form any less weight, especially where the State Agency non-examining doctors, on whose opinions the ALJ relied, had themselves evaluated Plaintiff using a check-box form.

The records show that the ALJ rejected the opinion of Dr. Coleman as expressed in the check-box form because it "did not identify objective findings based on a thorough mental status examination." Tr. 25. Nothing in the evaluation indicates that Dr. Coleman performed a thorough mental status exam. Additionally, the comments included in Dr. Coleman's evaluation reveal that his findings were based on Plaintiff's self-reported symptoms. *See* Tr. 162, Section G. A doctor's opinion of disability that is "'presmised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Here, the ALJ properly discounted Plaintiff's credibility (see discussion below), making his rejection of Dr. Coleman's opinion proper.[1] Accordingly, the ALJ did not err in rejecting Dr. Coleman's opinion.

---

[1] In a footnote, Plaintiff argues that the ALJ's failure to evaluate Plaintiff's paranoid personality disorder, which was diagnosed by Dr. Coleman (Tr. 162), is an error requiring reversal. However, given the Court's conclusion that Dr. Coleman's opinion was properly discredited by the ALJ and the fact that no other physician diagnosed Plaintiff with such a condition, the Court finds that the ALJ did not commit error.

REPORT AND RECOMMENDATION
PAGE - 10

### *c. Mr. Erik Papritz*

Erik Papritz, M.A., Plaintiff's mental health counselor, began treating Plaintiff in December 2001. Tr. 299. Mr. Papritz is not an acceptable source, but was at least a "source," just as a lay witness is a source for information regarding a claimant's disability. *See* 20 C.F.R. § 404.1513 (e)(2000). Once an impairment is established using an "acceptable medial source," the SSA considers evidence from "other sources," including therapists" to "show the severity of your impairment(s) and how it affects your ability to work." *See* 20 C.F.R. 404.1513(d)(1); 416.913(d)(1). Lay testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account, unless such testimony is expressly disregarded, in which case "he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993).

Plaintiff argues that the ALJ did not give Mr. Papritz's opinion any weight because he is not a medical doctor and as such, not an "acceptable medical source." Contrary to Plaintiff's assertion, the ALJ's comment regarding Mr. Papritz not being an acceptable medical source related to Mr. Papritz's diagnosis of Plaintiff with an animal phobia, natural environment phobia, and situational type phobias, all of which were never diagnosed by an "acceptable medical source." *See* Tr. 28. The ALJ gave other reasons for discounting Mr. Papritz's opinion. The ALJ noted that Mr. Papritz saw Plaintiff only twice and, therefore, "cannot be considered to have established the type of long term therapist patient relationship that would enable him to form an accurate impression of her actual functioning over a long period of time." The ALJ also noted that Mr. Papritz's evaluation does not agree 1) with his own observations during examinations, 2) with other findings of record including those of Plaintiff's counselor, Mrs. Rawlins and the State Agency doctors, and 3) with Plaintiff's level of activities.

1  Tr. 28.

2  Accordingly, the ALJ met the legal standard required by giving germane reasons
3  for discounting Mr. Papritz's opinion.

4  **B.     ALJ's Assessment of Plaintiff's Credibility**

5  "The ALJ is responsible for determining credibility[.]" *Magallanes*, 881 F.2d at
6  750.  If a claimant has established an underlying impairment which reasonably could be
7  expected to produce the alleged subjective complaints and there is no evidence of
8  malingering, the ALJ must provide clear and convincing reasons for rejecting the
9  claimant's testimony.  *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).
10 General findings are insufficient; rather, the ALJ must identify what testimony is not
11 credible and what evidence undermines the claimant's complaints.  *Dodrill*, 12 F.3d at
12 918; *Varney v. Sec'y of Health and Human Servs.*, 846 F.2d 581, 584 (9th Cir. 1988)
13 (Varney I).

14 The ALJ gave numerous reasons for discounting Plaintiff's credibility: 1) she
15 managed the birth and care of her baby and manages the household; 2) she is able to go
16 out of her house for necessary trips such as doctors' visits and shopping in spite of her
17 alleged agoraphobia; 3) she is described as pleasant and cooperative by her treating and
18 examining physicians in spite of her alleged difficulty with being around people; 4) she
19 was able to work as a telemarketer for a short of period of time when the need to do so
20 arose; 5) her counselor, Mary Rawlins's, comment regarding Plaintiff seeking only the
21 minimal amount of care required for her to continue to qualify for DSHS welfare
22 benefits, reflects an element of secondary gain; and 6) she is able to take some
23 medications despite her alleged phobia about taking pills.  Tr. 27

24 Plaintiff contends that the ALJ mischaracterized her testimony and failed to
25 provide clear and convincing reasons for rejecting her testimony.  Plaintiff cites to a

26

REPORT AND RECOMMENDATION
PAGE - 12

1 declaration that attempts to explain how the ALJ mischaracterized her testimony and
2 other evidence in the record. Tr. 337-341. A review of this declaration, however, does
3 not reveal any mischaracterizations.

4     Accordingly, the Court finds that the ALJ has provided clear and convincing
5 reasons for discounting Plaintiff's subjective complaints.

6 **C.  RFC Assessment**

7     Plaintiff argues that the ALJ erred when she failed to include in her RFC
8 assessment 1) all the exertional and nonexertional limitations resulting from Plaintiff's
9 severe and non-severe impairments and 2) all the limitations assessed by the State
10 Agency doctors. Plaintiff further argues that these errors were compounded because the
11 resulting hypothetical presented to the VE, at step five, was not a full and accurate
12 description of Plaintiff's limitations.

13     A claimant's RFC is based on what she can still do despite her limitations. *See*
14 20 C.F.R. § 416.945(a) (2001). The ALJ evaluates a claimant's RFC at step four of the
15 sequential evaluation process by considering all of the evidence, including any physical
16 and mental limitations. *See* 20 C.F.R. § 416.945(a)(b)(c), 416.946, and SSR 96-8p.
17 SSR 96-8p provides that "[t]he RFC assessment considers only functional limitations
18 and restrictions that result from an individual's medically determinable impairment or
19 combination of impairments, including the impact of any related symptoms." The ALJ
20 is free to accept or reject restrictions that the claimant alleges provided his findings are
21 supported by substantial evidence. *Magallanes*, 881 F.2d at 756-57.

22     **1.     Severe and Non-severe Impairments**

23     First, Plaintiff argues that even though the ALJ found that Plaintiff had a severe
24 impairment of PSVT (Tr. 25), a condition that causes heart palpitations, she assessed no
25 exertional limitation as a result of this condition. Plaintiff asserts that there is evidence
26

REPORT AND RECOMMENDATION
PAGE - 13

that her episodes of heart racing, during which she has to lay down, occur three to four times a month and last for a few minutes or up to twenty-five (25) or even forty-five (45) minutes. *See* Tr. 209, 361-62.  Second, Plaintiff argues that the ALJ did not assess any limitations from the panic attacks she experiences approximately once a week, lasting about twenty (20) minutes.  Third, Plaintiff faults the ALJ for not assessing limitations based on her migraine headaches, which cause "tunnel vision, slurred speech, [and] white flashes." *See* Tr. 189.

With respect to her PSVT and panic attacks, the evidence upon which Plaintiff relies, consists of reports of subjective complaints and not medical findings regarding the impact of these impairments.  Given the ALJ's finding that Plaintiff's subjective complaints are not credible (Tr. 27), Plaintiff has not demonstrated that these two conditions necessitated a more restrictive RFC assessment.

Plaintiff, in her reply brief, argues that even if the ALJ discounted Plaintiff's credibility, the ALJ's finding that her PSVT is a severe impairment at step two, obligated the ALJ to find some type of exertional limitation in the RFC assessment.  Plaintiff, however, provides no legal support for such a claim.  The fact that the ALJ was not quick to dismiss Plaintiff's PSVT as a non-severe impairment, continued with the sequential evaluation process, and later concluded that given Plaintiff's lack of credibility, this impairment does not cause a limitation, is consistent with the requirements of SSR 85-28.[2]  Additionally, there is no support for Plaintiff's proposition that the ALJ must assess some exertional limitation as a result of Plaintiff's occasional heart palpitations.  In the State Agency RFC assessment, which the ALJ adopted, the medical consultants considered Plaintiff's heart palpitations, among other impairments, in making their RFC assessment that included only non-exertional limitations.  Tr. 226.

---

[2] An impairment can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  SSR 85-28.

REPORT AND RECOMMENDATION
PAGE - 14

As to her migraine headaches, the evidence reveals that the headaches are relieved by taking Excedrin and Tylenol. Tr. 189, 282. Accordingly, the ALJ did not err in her evaluation of these impairments.

### 2. State Agency Doctors' RFC

Dr. Thomas Clifford, and Dr. Terilee Wingate, completed a residual functional capacity assessment form on May 10, 2001, (Tr. 224-227), wherein they found that Plaintiff had the following RFC: 1) she is able to function in a simple repetitive setting with no public contact since this could exacerbate stress induced symptoms; 2) she is capable of persisting and maintaining a normal workday/workweek; 3) she can interact with supervisors or co-worker but would have difficulty accepting supervision and criticism; 4) she would have some difficulty making work related decisions; and 5) she should avoid normal hazards due to lack of foresight. Tr. 226.

Plaintiff argues that the ALJ did not make allowance in her RFC assessment for additional limitations assessed by the State Agency doctors, those being "moderate" limitations in Plaintiff's ability to 1) perform activities within a schedule, 2) maintain regular attendance, and 3) be punctual within customary tolerances. *See* Tr. 224.

As Defendant explained in her response, the alleged additional moderate limitations were included in Section I of the Mental Residual Functional Capacity Assessment Form ("MRFC") (Tr. 224), which does not constitute the RFC assessment.[3] It is the narrative in Section III of the MRFC form, that is the actual mental RFC assessment and the one adjudicators are to use. *See* POMS DI 24510.060(B)(4). The ALJ, in accordance with the State Agency RFC assessment in Section III, found that Plaintiff was unable to perform more than simple and routine tasks, should have no public contact, and should have limited contact with co-workers and supervisors. Tr.

---

[3] *See* POMS DI 24510.060(B)(2), 2001 WL 1933367 (SSA-POMS).

REPORT AND RECOMMENDATION
PAGE - 15

1  26-27.

2      Additionally, Plaintiff faults the ALJ for not including Plaintiff's difficulties in avoiding normal hazards in the work place due to her lack of foresight, which is another limitation assessed by the State Agency doctors. *See* Tr. 226. The ALJ did, in fact, err in not addressing Dr. Clifford's and Dr. Wingates's opinion that Plaintiff would have some difficulties avoiding normal hazards in a workplace, as required by SSR 96-6p. Nevertheless, the ALJ's error was harmless because the list of jobs produced by the VE does not include jobs that involve exposure to hazards. The Dictionary of Occupation Titles' ("DOT") descriptions for deli-cutter slicer (*DOT* 316.684-014), cleaner (*DOT* 323.687-014), and laundry worker (*DOT* 361.685-018) indicate that vibration, moving mechanical parts, electric shock, high exposed places, radiation, explosives, and toxic caustic chemicals are not present these jobs. *See* U.S. Dep't of Labor, DOT (4th ed. 1991), *available at* Westlaw, DICOT database. Plaintiff asserts that the job of deli-cutter slicer and laundry worker involve the hazard of moving mechanical parts as evident from the description of these jobs. The Court notes, however, that for both jobs, the section entitled Environmental Conditions specifically states: "Moving Mech. Parts: Not Present - Activity or condition does not exist." Therefore, any such moving parts referred to in the job description do not constitute a hazard, thus making the ALJ's error harmless beyond a reasonable doubt.

//
//
//
//
//
//

REPORT AND RECOMMENDATION
PAGE - 16

## VIII.  CONCLUSION

The Commissioner's determination to deny Plaintiff DIB and SSI benefit is supported by substantial evidence and is free of legal error.  Based on the record evidence, the undersigned recommends that the Commissioner's decision be AFFIRMED.

DATED this  21st  day of September, 2005.

MONICA J. BENTON
United States Magistrate Judge